IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ORLANDO COOPER, | ) |
| Plaintiff, | ) |
| v. | ) 2:13-cv-02152-JEO |
| CLP CORPORATION d/b/a MCDONALD'S, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an employment discrimination case. Plaintiff Orlando Cooper ("Cooper" or "the plaintiff") claims that CLP Corporation, doing business as McDonalds ("CLP" or "the defendant"), is liable under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* for disability discrimination and a hostile work environment. (Doc.[1] 1 ("Complaint" or "Compl.")). The cause comes to be heard on CLP's motion for summary judgment. (Doc. 15). Counsel for the parties have fully briefed the issues. (*See* Docs. 16 (Brief in Support of Summary Judgment ("Def. Br.")); Doc. 22 (Plaintiff's Memorandum in Opposition to the Defendant's Motion for Summary Judgment ("Pl. Br."); and Doc. 24 (Defendant's Reply ("Def. Reply Br.")). Upon consideration, the court[2] concludes that the defendant's motion for summary judgment is due to be granted.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet.

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge, pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73. (Doc. 12).

I.   **SUMMARY JUDGMENT STANDARDS**

Pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, party is authorized to move for summary judgment on all or part of a claim or defense asserted either by or against the movant. Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a), Fed. R. Civ. The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. PROC. 56(c)(1)(A) & (B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). At summary judgment, "the judge's

function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## II.     FACTS[3]

The McDonald's restaurant on Acton Road in Birmingham, Alabama is a franchise of CLP.  (Catherine Houston Dec. ("Houston Dec.") at ¶ 9).[4]  Cooper returned to the restaurant on January 28, 2013, as a crew member after being previously employed at that location.  (Cooper Deposition ("Pl. Dep.") at 61, 67).[5]  Spanda Holmes ("Holmes"), the general manager, was his supervisor at the restaurant.  Holmes made the decision to hire Cooper on both occasions that he applied.  (*Id*. at 62).

After Cooper returned to work in 2013, Holmes engaged in name-calling related to his *strabisums*, which is more commonly referred to as "lazy eye."  (Pl. Dep. at 106).  Specifically, Cooper claims that Holmes made derogatory remarks towards him referencing his eye condition, including calling "cockeyed-ass" and "lazy-eyed."  (*Id*. at 106-07).  Cooper requested that Holmes stop calling him these derogatory names, but this only resulted in her sending him home early one day.  (*Id*. at 116).

Cooper did complain about Holmes's name-calling to CLP District Manager Monica Love ("Love").  (*Id*. at 117).  He does not know if Love ever spoke to Holmes regarding his

---

[3]The facts set out below are gleaned from the parties' submissions and are viewed in a light most favorable to the plaintiff.  They are the "'facts' for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Insurance Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[4]Houston's declaration is located at document 17, exhibit 1.

[5]Cooper's deposition is located at document 17, exhibit 2.

3

complaint, but, according to Cooper, Holmes's name-calling did not cease after he spoke with Love. (*Id*. at 118). Cooper did not call the CLP human resources department to lodge a formal complaint. (*Id*.)

In early April 2013, Cooper wrote Holmes a letter, requesting that he be allowed to take off work April 11-13, so that he could be present at the hospital with his mother for the birth of his brother. (*Id*. at 85-86). He states that Holmes granted him permission by signing his letter, and further recording these dates in her scheduling book.[6] (*Id*. at 123). Despite this, Cornelius Martin, a co-worker, called Cooper on his day off on behalf of Holmes and Martin told Copper that if he did not show up for work within thirty minutes, he would lose his job. (*Id*. at 86). Cooper did not go to work day because his brother was still-born, and he did not want to leave his mother. (*Id*. at 122). Cooper's employment with CLP was terminated. Holmes later testified that she terminated Cooper because he was a "no-call/no-show." (Holmes Dep. at 23).[7]

According to Holmes, she received a text message from Cooper on April 14, 2013, that included a picture of McDonald's food products in a freezer. The message sated, "The picture is food from your store in my freezer, and [other McDonald's employees] helped me get it." (Houston Dec. at ¶ 22; Pl. Dep. at 130-31; Holmes Dep. at 22, 51, 55, 76-77, 84). An investigation was conducted, the police were notified, and other McDonald's employees were terminated. (Houston Dec. at ¶¶ 22-25; Holmes Dep. at 77-80). Cooper vehemently denies that he took the picture, and he asserts that the freezer depicted in the picture is not his. (Pl. Dep. at

---

[6]This letter is not included in the record, but the court will assume for purposes of summary judgment that this letter does exist, and that Holmes signed it. However, Holmes testified in her deposition that she did not grant Cooper permission to be off work these dates.

[7]Holmes's deposition is located at document 17, exhibit 3.

4

131-34).

## III.   DISCUSSION

The plaintiff alleges that CLP discriminated against him and subjected him to a hostile work environment on the basis of his *strabisums* or "lazy eye." (Comp. at 3-4).  The defendant asserts that his claims are due to be dismissed because (1) he cannot establish a *prima facie* case of disparate treatment disability discrimination; (2) even assuming he could state a *prima facie* case of discrimination, the undisputed evidence shows CLP took all actions for legitimate, non-discriminatory, non-pretextual reasons; (3) he cannot state a *prima facie* case of a hostile work environment; (4) even assuming he could state a *prima facie* case, he cannot establish liability against CLP; and (5) the doctrine of after-acquired evidence forecloses back pay.  (Def. Br. at 4).

### A.   Count I - ADA Disability Discrimination

#### 1.   Generally

Section 102(a) of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of a disability in regard to job application procedures; the hiring, advancement, or discharge of employees; employee compensation; job training; and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff has the burden at trial to show: (1) that he is disabled; (2) that he is a qualified individual; and (3) that he was subjected to unlawful discrimination because of his disability.  *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F3d 1264, 1268 (11th Cir. 2014) (citing *Holly v. Clairson Industries, LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007)).

        2.     *Prima Facie* Case

           a.     **Whether the Plaintiff was Disabled**

CLP argues that the plaintiff is not disabled. (Def. Br. at 17-23). Cooper responds that he is disabled and that CLP has incorrectly cited cases that precede the American with Disabilities Act Amendments Act of 2008 ("ADAAA"), which is applicable and requires a more expansive view of what constitutes a disability. (Pl. Br. at 14-18).

Disability is defined three ways under the ADA: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Courts are guided by the regulations promulgated by the EEOC when applying the provisions of the ADA. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 n. 1 (11th Cir. 1998). Under the ADAAA, a disability is defined as, among other things, a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g)(1)(i). An impairment qualifies as a disability if:

> it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii). "The new regulations [under the ADAAA] go on to explain that the term 'substantially limits' is to be broadly construed 'in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.' " *Barlow v. Walgreen Co.*, 8:11–CV–71–T– 30EAJ, 2012 WL 868807, *4 (M.D. Fla. Mar. 14, 2012) (citing 29 C.F.R. §

1630.2(j)(1)(i).[8]  "The ADAAA amendments, however, do not affect the elements of a plaintiff's *prima facie* case."  *Howze v. Jefferson County Committee for Economic Opportunity*, 2012 WL 3775871, *10 (N.D. Ala. Aug. 28, 2012) (citing *Barlow*, 2012 WL 868807, *4 ("Despite the changes brought about by the ADAAA, the elements of a plaintiff's *prima facie* case remain the same.")).  The regulations provide that seeing is considered to be a major life activity as that term is used in the ADA.  29 C.F.R. § 1630.2(i)(1)(i).

As noted above, the plaintiff alleges he suffers from *strabismus* or "lazy eye."  It is undisputed that *strabismus* is a medical condition, so the relevant question is whether Cooper is disabled (prong one) or regarded-as disabled (prong three) under the applicable regulations.[9]  *See Abbott v. Elwood Staffing Services, Inc.*, 44 F. Supp. 3d 1125, 1166 (N.D. Ala. July 31, 2014) ("even assuming that the plaintiff had a pregnancy related impairment, the plaintiff was not suffering from a disability unless that impairment *substantially limits a major life activity*") (italics in original)); *May v. American Cast Iron Pipe Co.*, 2014 WL 1043440 (N.D. Ala. March 17, 2014) ("'the mere existence of a physical impairment does not constitute a disability under

---

[8]United States District Judge Virginia E. Hopikins has stated:

> With the passage of the ADAAA, Congress specifically removed the stringent standards previously used to determine whether an individual was a "qualified individual with a disability."  Indeed, the new regulations state that:
>
>> The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA.  Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of 'disability' in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA.
>
> 29 C.F.R. § 1630.1(c)(4).

*Howze v. Jefferson County Committee for Economic Opportunity*, 2012 WL 3775871, *10 (N.D. Ala. Aug. 28, 2012).  The undersigned agrees.

[9]The plaintiff does not assert that he is disabled under the second prong concerning "a record of such impairment."

the ADA;' the statute requires that the physical impairment must also substantially limit a major life activity.") (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998)). The defendant argues that the plaintiff has failed to specify any major life activity that is substantially limited by his eye condition. Additionally, the defendant cites numerous cases wherein courts have found that the plaintiff's condition does not "substantially limit" the plaintiff for purposes of the stating a claim.[10] (Def. Br. at 19). The plaintiff retorts that the cited cases predated the amendments to the ADAAA, which mandates that the term "'disability' must be construed 'to the maximum extent permitted by the terms of [the ADA]" and that the term "'substantially limits' must also be construed broadly." (Pl. Br. at 15-16 (citing *Black v. Wigington*, 1:12-CV-03365-RWS, 2015 WL 468618, *14 (N.D. Ga. February 4, 2015)).

Under the first prong for defining a disability, the court finds the plaintiff has not demonstrated that he has a disability under the ADAAA. The plaintiff testified that the *strabismus* does not limit him in any substantial way. He is able to work, play sports, and participate in other life activities. (Cooper Dep. at 103-04). His only limitation is when he covers his "good eye." When that eye is covered, his vision is impaired. By way of example, at his deposition, he was unable to see clearly across the table when he covered his left eye. (*Id*. at 102-03). However, when he uses both eyes, he is not limited at all.

Under the third prong for defining a disability – the "regarded-as" consideration, the question is not as simple.

---

[10]*See Witchard v. Montefiore Medical Ctr.*, 2009 WL 602884, at *10-12 (S.D.N.Y. Mar. 9, 2009) (*strabismus* and "lazy eye" were not substantially limiting impairments); *Roberts v. Dimension Aviation*,. 319 F. Supp. 2d 985, 990 (D. Ariz. 2004) (holding that *strabismus* or "lazy eye" was not substantially limiting where plaintiff admitted the alleged condition had little to no effect on his vision and that he could read and "go about his daily activities"); *Jasany v. U.S. Postal Serv.*, 755 F.2d 1244, 1250 (6th Cir. 1985) (plaintiff's *strabismus* was not substantially limiting where the condition "had never had any effect whatsoever on any of his activities"); and *Sackett v. WPNT, Inc*., 1995 WL 686708, at *4-5 (W.D. Penn. Sept. 19, 1995) (*strabismus* was not a substantially limiting impairment).

> Th[e] post-ADAAA formulation of the "regarded-as" standard is markedly different from its predecessor.  In the pre-ADAAA regime, courts found liability in regarded-as cases only where "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton* [*United Air Lines Inc*.], 527 U.S. [471,] 489 [(1999)].  Thus, "regarded-as" liability hinged on the employer's belief that the employee's actual or perceived impairment substantially limited one or more major life activities.  Under the new ADAAA standard, however, perception of an impairment is all that is necessary, "whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A) (emphasis added); *see also Rubano v. Farrell Area School Dist*., –- F. Supp. 2d –-, 2014 WL 66457, *11 (W.D. Pa. Jan. 8, 2014) ("After the 2008 amendments to the ADA definition of disability, all that an ADA plaintiff must show to raise a genuine issue of material fact for the 'regarded as' prong is that a supervisor knew of the purported disability."); *Pinckney v. Federal Reserve Bank of Dallas*, 2013 WL 5461873, *9 (W.D. Tex. Sept. 30, 2013) ("The ADAAA makes clear that the 'regarded as' disabled prong no longer requires a showing that the employer perceived the individual to be substantially limited in a major life activity.").  "Thus, a 'regarded as' claim under the ADAAA is much easier to prove than a 'regarded as' claim before the ADAAA." *Rocha v. Coastal Carolina Neuropsychiatry Crisis Services, P.A*., — F. Supp. 2d —, 2013 WL 5651801, *5 (E.D.N.C. Oct. 16, 2013) (citations omitted).  In the context of Powell's claims, "a plaintiff now might be considered disabled due to obesity under the ADA if her employer perceived her weight as an impairment." *Lowe* [*v. American Eurocopter, LLC*], 2010 WL 5232523, at *7 (N.D. Miss. December 16, 2010).

*Powell v. Gentiva Health Services, Inc.*, 2014 WL 554155, *7 n.14 (S.D. Ala. Feb. 12, 2014).

*Accord Snyder v. Livingston*, 2012 WL 1493863 (S.D. Ind. April 27, 2012).[11]  *See also Stahly v.*

---

[11]In *Snyder*, the court stated:

Prior to the ADAAA, a plaintiff proceeding under the "regarded as" prong had to show that the employer mistakenly believed either that she had an impairment that substantially limited a major life activity or that her actual, but non-limiting, impairment substantially limited a major life activity. *Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 556 (7th Cir. 2011), [abrogated on other grounds in *Young v. United Parcel Service, Inc*., ___ U.S. ___, 135 S. Ct. 1338 (2015)] (citations omitted). Congress amended the ADA, however, "to make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1(c)(4); see ADAAA, Pub.L. No. 110–325 (stating that one of the purposes of the ADAAA is "reinstating a broad scope of protection to be available under the ADA"); *Hoffman* [*v. Carefirst of Fort Wayne, Inc*.], 737 F. Supp. 2d [976,] 984 [(N.D. Ind. August 31, 2010)].  According to the regulations, the definition of "disability" is to be construed broadly in favor of expansive coverage, and the primary focus in ADA cases "should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 20 C.F.R. § 1630.1(c)(4).  Consistent with this purpose, "while the ADA previously required the perceived disability to

9

*South Bend Public Transp. Corp.*, 2013 WL 55830, *5-6 (N.D. Ind. Jan. 3, 2013) (finding that a defendant's awareness of the fact that the plaintiff was taking medication, had been admitted to an emergency room for an anxiety attack, had been on leave under the Family and Medical Leave Act, and was referred to a stress recovery center by the company's employee assistance program precluded summary judgment); *Majors v. General Electric Co.*, 2012 WL 2912726,*7 (S.D. Ind. July 16, 2012) (holding that "although Plaintiff does not meet the definition of disability under the actual disability or record of impairment standards, there is a genuine issue of material fact as to whether Plaintiff meets the 'regarded as' standard" because "Defendant regarded Plaintiff as impaired with regards to lifting"); *Snyder*, 2012 WL 1493863 (comments that the plaintiff was unstable were sufficient to show in a demotion case that the defendant regarded her as disabled for purposes of summary judgment).

The defendant asserts that the plaintiff "has presented no evidence that CLP perceived him as having a disability. Even assuming, *arguendo*, Holmes referred to [the p]laintiff as 'cockeyed' or 'lazy-eyed,' such comments are insufficient to show that [the p]laintiff was regarded or perceived as having an impairment." (Def. Br. at 21). The plaintiff disagrees, arguing that the expansive coverage of the ADAAA compels that the motion be denied.

This issue distills to whether the regular use of pejorative terms by Holmes when

---

substantially limit a major life activity, the [ADAAA] removed this hurdle," and the "ADA now includes perceived disabilities 'whether or not the impairment limits or is perceived to limit a major life activity.' " *Becker* [*v. Elmwood Local School District*,], 2012 WL 13569, at *9 [(N.D. Ohio. Jan. 4, 2012)] (quoting 42 U.S.C. § 12102(3)(A)). Accordingly, as the ADAAA changed the interpretation of the disability categories and broadened the ADA's scope, *Hoffman*, 737 F. Supp. 2d at 984, relying on cases applying the pre-amendment version of the ADA is unpersuasive, *see Becker*, 2012 WL 13569, at *10 (noting that, despite factual similarities between the present case and a prior one, the court was unpersuaded because the prior case relied on the pre-amendment version of the ADA).

*Id.*, 2012 WL 1493863, * 7.

addressing the plaintiff is sufficient to overcome the defendant's motion for summary judgment under the more liberal standards of the ADAAA.  As noted above, the ADA landscape has changed with the passage of the ADAAA.  Congress eased in part the evidentiary burden on ADA plaintiffs when it "announced that 'the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.' "  *Vaughan*, 2014 WL 4978439, * 8 (citations omitted).

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity*.

42 U.S.C. § 12102(3)(A) (italics added); *see Vaughan*, 2014 WL 4978439, *10 (citing *Barlow*, 2012 WL 868807, at *4 (holding that evidence a supervisor told the plaintiff that she could no longer work for the employer because she was disabled was sufficient to satisfy the "regarded as" prong of the disability definition under the ADAAA)); *Harty v. City of Sanford*, No. 6:11–cv–1041– Orl–31KRS, 2012 WL 3243282, *4 (M.D. Fla. Aug. 8, 2012) (holding that evidence the employer knew of the plaintiff's restrictions and the plaintiff's direct supervisor "asked [him] to resign because of [his] restrictions" is sufficient, under the ADAAA, to prove the employer regarded the plaintiff as disabled)).  In an unpublished opinion, the Eleventh Circuit Court of Appeals has stated, "Because of that amendment, a plaintiff need demonstrate only that the employer regarded him as being impaired, not that the employer believed the impairment prevented the plaintiff from performing a major life activity."  *Wolfe v. Postmaster General*, 488 F. App'x 465, 468 (11th Cir. Aug. 31, 2012).

The emphasis has shifted from whether the person is disabled to whether the defendant

has met the requirements of the legislation. *Harty*, 2012 WL 3243282, *4. That is not to say that the first element for proving a claim is no longer viable. To the contrary, it remains, but in a less prominent position. Courts are instructed that "disability 'shall be construed in favor of broad coverage of individuals ... to the maximum extent permitted by [the ADA].' " *Abbott*, 44 F. Supp. 3d at 1165 (citing 42 U.S.C. § 12102(4)(A) & 29 C.F.R. § 1630.1(c)(4)).

Applying the changes in the ADA to this case, the court is convinced that summary judgment still is due to be granted the defendant. Holmes's comments, while cruel and reprehensible, only demonstrate an awareness of Cooper's physical condition. They do not demonstrate that she regarded him as having a physical *impairment*. As noted by the court in *Powell*, "plenty of people with an 'undesirable' physical characteristic are not impaired in any sense of the word." *Id*. at 2014 WL 554155, *7. That is the instance in this case. While Holmes's statements are clearly commentary on the plaintiff's physical appearance, they do not demonstrate that she regarded him as having an impairment. Accordingly, Cooper has failed to demonstrate a *prima facie* case of discrimination. Summary judgment is due to be granted on this claim.

    **b.  Whether the Plaintiff Was Discriminated Against Because of an Alleged Disability**

Even assuming that the plaintiff could establish that the defendant regarded him as disabled, the defendant also argues that the plaintiff cannot demonstrate the third element of his *prima facie* case – that CLP unlawfully discriminated against him because of any disability. (Def. Br. at 23). Cooper argues that there is direct evidence of discrimination and there is a fact dispute as to whether he had permission to be off work. (Pl. Br. at 23-24).

Cooper may offer direct evidence in support of his claim of discrimination or he may use circumstantial evidence under the traditional framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  "To establish unlawful disparate treatment using circumstantial evidence, a plaintiff *generally* must demonstrate that his employer treated similarly situated employees outside of his protected class more favorably than he was treated." *Wolfe*, 488 F. App'x at 468 (italics added).  Cooper can state a *prima facie* case if he can present evidence that an employee outside his protected class, who was similarly situated to him in all relevant respects, was treated more favorably with regard to nearly identical conduct.  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004).

As noted above, Holmes made numerous pejorative comments concerning Cooper's physical appearance, however, they do not constitute direct evidence of discrimination.  Direct evidence of discrimination is "evidence, which if believed, proves [the] existence of fact in issue without inference or presumption."  *Merritt v. Dillard Paper Company*, 120 F.3d 1182, 1189 (11th Cir. 1997).  At most, this evidence only suggests discrimination.  Additionally, Cooper has not demonstrated that CLP treated other "no call/no show" persons differently.[12]  The evidence

---

[12] While the term "no call/no show" does not appear in the CLP handbook, it is replete with references concerning attendance, including:

> If you are sick or you are going to be late for work or absent, you must call in and let the management know at least three hours before your scheduled shift so we can call a replacement....

and

> If an employee must be absent or tardy, he/she is required to notify his/her immediate supervisor. The employee must notify the supervisor at least three (3) hours before the start of the employee's shift.  The policy's purpose is to give supervisors and all employees [an awareness] that the employee's absenteeism or tardiness affects the opportunity to adjust their work schedules to ensure that all necessary activities and work are preformed on time.

(Doc. 17-5 at 2-3 of 50 (Handbook) (underlining in original)).  Additionally, it provides:

> Your work schedule is posted one day after computer processing, which will be no less than one

shows that "no call/no show" persons who were not disabled also generally were terminated when they failed to report for work. (Houston Dec. at ¶ 20). However, there is no indication in the record that they are similarly situated to Cooper in that they requested and were granted permission to be off of work. Despite this, the plaintiff has still failed to demonstrate that he was terminated because of his disability.

### 3. Defendant's Reason for the Termination

CLP next asserts that even assuming a *prima facie* case, it is entitled to summary judgment because Cooper cannot show that its legitimate, non-discriminatory reason for his termination is a pretext for disability discrimination. (Def. Br. at 25). CLP asserts that it terminated Cooper because he violated its attendance policy regarding "no call/no show" when he failed to report to work.

The facts surrounding the time of termination are confusing at best.[13] Accordingly, the court will use Cooper's deposition testimony to articulate the relevant facts. Sometime before April 2013, Cooper wrote a letter requesting that he be allowed time to be present with his mother for the birth of his brother.[14] (Pl. Dep. at 85-87, 122). Holmes approved his request.[15]

---

        day prior to the next work week. You are expected to work your assigned shift as scheduled, unless you are excused by a salaried manager.

        If you need time off, you must contact your store manager before the weekly work schedule is prepared. Requests for time off will be considered by not always honored....

(*Id*. at 10 of 50).

[13] By way of example, a close look at Cooper's deposition demonstrates that there was confusion over the dates of the events (*e.g.*, March versus April 7 versus April 11-13). However, the parties do agree that the events including the conversation with Cooper, Martin and Holmes are what led to the termination.

[14] Neither party has produced the note or a copy of the same.

[15] Cooper testified that Holmes "took the note – she took the letter, signed the bottom of it, hung it up in the office, and she went in the schedule book and gave me the days that I requested off." (*Id*. at 87).

(*Id*. at 85-87).  While Cooper was at the hospital with his mother, a friend of his, Cornelius Martin, who also worked at McDonald's called him on behalf of Holmes.  (*Id*. at 86).  Cooper could hear Holmes in the background talking to Martin.[16]  (*Id*.)  She wanted Cooper to come to work because she did not "have anyone to come in."  (*Id*.)  Cooper reminded her, via Martin, that he had requested the days off to be with his mother.  He also informed her that he was with his mother at that time.  (*Id*.)  At some unspecified point in the conversation, Cooper asked Holmes when she needed him.  (*Id*. at 124).  She told him, "Well, right now."  (*Id*.)  Holmes also stated, "If you can't get here in thirty minutes, then you are fired."  (*Id*. at 124-25).  Cooper "told her that [he] would not be able to make it [to work]."  (*Id*. at 85).

Later that day, Martin called Cooper to pick him up at work.  Because he was still at the hospital, Cooper sent someone else to get Martin.  (*Id*. at 125-26).  Cooper testified at his deposition that he did not pick up Martin at work that day.[17]  (*Id*. at 126).  He also did not return to work over the following two days because he still "was on [his] requested days off."  (*Id*. at 123).

The defendant states the plaintiff's "claim that [he] had requested off from work on the day(s) in question is irrelevant because [the p]laintiff offers no evidence that ... Holmes did not reasonably and honestly believe he was scheduled to be at work and was a no-call/no-show for his shift."  (Def. Br. at 27 (footnote omitted)).  The plaintiff retorts that this is a disputed fact question for the jury.  (Pl. Br. at 24).

The law is clear that a court is not to second-guess business decisions or to act as a super-

---

[16]The following conversation involving Cooper and Holmes all occurred via Martin.  (*Id*. at 125).

[17]As best the court can tell from the depositions of Cooper and Holmes, Holmes believes that Cooper picked up Martin after he failed to report to work.  (Holmes Dep. at 50).

personnel department.  *See E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).  The relevant question is whether the plaintiff has adequately demonstrated that the proffered reason for the termination is pretextual.  *Id*.  The plaintiff must demonstrate that the decision was motivated by unlawful discriminatory animus.  *Id*. (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999)).

In this case, it is clear that there is a dispute surrounding why Cooper did not come to work.  However, even though the court finds that Cooper did seek and receive the approval to be off, the question is whether Cooper has demonstrated that the defendant's reason for the termination was a pretext for discrimination.  As to this issue, the record shows that Holmes demanded that Cooper come to work and he did not.  There is nothing before the court to suggest that her decision to terminate Cooper is anything but her misguided belief that he should have come to work as she requested, even if she might have previously indicated that he could be off, particularly after she believed she saw him in the restaurant parking lot later that day.  Accordingly, summary judgment is due to be granted as to this claim on this ground as well.

**B.     Count II - Hostile Work Environment Claim**

An actionable hostile work environment claim requires that the plaintiff demonstrate the following: (1) he belongs to a protected group (i.e., he is disabled under the ADA); (2) he was subjected to unwelcome harassment; (3) the harassment to which he was subjected was based on a disability; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the defendant knew or should have known of the harassment, but failed to take prompt, remedial action.  *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1366 (S.D. Fla. Mar. 25, 1999).  Additionally, to be actionable, the harassment must be so severe or pervasive as

to "ha[ve] the purpose or effect of unreasonably interfering with [the plaintiff's] work performance or creating an intimidating, hostile, or offensive environment." *Id*. (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65 (1986)). In assessing whether the conduct is severe or persuasive, the Eleventh Circuit has provided a non-exhaustive list to consider, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with the employee's job performance." *Marable v. Marion Military Institute*, 595 F. App'x 921, 927 (11th Cir. 2014) (*McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008)). The Eleventh Circuit Court of Appeals has also stated, "The courts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Donald v. UAB Hospital Management, LLC*, 2015 WL 5915323, *5 (N.D. Ala. Oct. 9, 2015) (quoting *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc)).

Cooper premises this claim on Holmes's comments on his eye. (Pl. Dep. at 97-98). However, if the plaintiff is neither disabled nor regarded as disabled, none of the harassing conduct may be deemed to have been discrimination "because of" a disability as defined by the ADA. Thus summary judgment is due to be granted on that ground. But even assuming a disability or that the plaintiff is regarded as disabled such that the harassing conduct would be deemed to be motivated by a prohibited animus, the plaintiff still must show the harassment was severe or persuasive enough to create an actionable hostile work environment. Cooper summarized the harassment during his deposition by saying:

> The main comments to me were: You cockeyed ass, you need to work faster, You're too slow. She's like: You can't see back there, what's wrong? Like I said, ... , everything was in reference to my eye. It was never about how I moved. It was just mainly jokes towards my eye.

(*Id*. at 105; *see also* 105-06). Cooper worked for CLP from January 28, 2013 until his termination on April 13, 2013. (*Id*. at 67; Houston Dec. at ¶ 10). As to the frequency of the comments, Cooper stated that it was an "every day thing." (Pl. Dep. at 115). On one occasion, when Cooper asked Holmes to stop calling him by that name ("cockeyed ass"), she made him clock out and sent him home because he was challenging her authority. (*Id*. at 115-16). Most times, however, he just ignored her and kept on working. (*Id*. at 116). Holmes's conduct bothered him enough that Cooper complained one time in late February or early March to Monica Love, the District Manager. (*Id*. at 28, 116-18). Cooper did not notice a change in Holmes's treatment of him after he talked with Love, but he did not complain any further to anyone. (*Id.* at 118).

The court finds that the plaintiff's evidence is insufficient to overcome the defendant's motion for summary judgment on this claim. While the frequency of Holmes's comments were daily, the plaintiff worked at the store for only about ten weeks. The comments were derogatory and offensive, but not physically threatening. They did not interfere with Cooper's job performance except on the one occasion Holmes sent him home. Typically, Cooper just kept on working when Holmes made such remarks. (*Id*. at 116). Additionally, he only complained once to the district manager. When there was no change in Holmes's conduct, Cooper did not complain any further and he never complained to the Human Resources Director as provided for in CLP's Anti-Harassment Policy. (Doc. 17-5 at 16-17 of 50). Under the circumstances, the

court finds that the complained-of conduct, while cruel and offensive, was not sufficiently severe or pervasive that it affected Cooper's employment. Accordingly, summary judgment is due to be granted CLP.

To the extent CLP argues that it is entitled to summary judgment because of Cooper's failure to utilize its Anti-Harassment Policy, the court also agrees. (Def. Br. at 32). As stated by United States District Judge Abdul Kallon:

> ... while an employer can generally be liable for harassment by a supervisor with immediate authority over an employee (in this case, Lankford), the employer is not liable where (1) it exercises reasonable care to prevent harassing behavior, such as, by promulgating an anti-harassment policy that it distributes to its employees; and (2) the employee fails to take advantage of preventative or corrective opportunities that the employer offers. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1286 (11th Cir. 2003).[18] And indeed, [Defendant] SBC undeniably promulgated an anti-harassment policy which articulated that employees should complain to SBC's human resources manager or Chief Financial Officer, ... , Baker acknowledged receiving that policy in the employee handbook, ... , and Baker admittedly failed to complain to the persons designated in the handbook, .... In failing to do so, Baker acted unreasonably because "once an employer has promulgated an effective anti-harassment policy and disseminated that policy and associated procedures to its employees, then 'it is incumbent upon the employees to utilize the procedural mechanisms established by the company specifically to address problems and grievances.' " *Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1298, 1300 (11th Cir. 2000) (quoting *Farley v. American Cast Iron Pipe*, 115 F.3d 1548, 1554 (11th Cir. 1997)). Accordingly, summary judgment is appropriate with respect to Baker's hostile work environment claim.

*Baker v. Supreme Beverage Co.*, No. 2:13-cv-00222-AKK, 2014 WL 7146790, at *9 (N.D. Ala.

---

[18] Judge Kallon noted:

While this rule, the *Faragher* defense, does not apply where "the supervisor's harassment culminates in a tangible employment action, such as discharge," *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998), Baker's discharge in this case does not preclude application of the *Faragher* defense because he has not shown that he was terminated based on his race rather than his failure to complete his deliveries. *See Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1281–82 (11th Cir. 2003) (*Faragher* defense applied in a sex harassment case where "there [was] no evidence that [employer], or any of the employees acting on its behalf, considered [plaintiff's] gender when the company terminated her").

*Baker*, 2014 WL 7146790, * 9, n.13.

Dec. 15, 2014).  In this case, CLP promulgated an anti-harassment policy that was available to Cooper and, as noted above, he failed to complain in accordance with that policy to the Human Resources Director, whose number was attached to the CLP Handbook that Cooper received. (Doc. 17-4 at 36-38 of 50 and 17-5 at 16-17 of 50).  While Cooper did complain to Love on one occasion, that is not sufficient under the circumstances to impose liability on CLP in this instance.[19]

## IV.  CONCLUSION

Based on the foregoing, CLP's motion for summary judgment (doc. 15) is due to be **GRANTED**.[20]  A separate final order will be entered.

**DONE**, this 23rd day of December, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[19] The evidence in this case does not demonstrate that Cooper was disabled or "regarded-as" disabled to preclude application of this defense.

[20] In view of the court's determination on the defendant's other contentions, it pretermits any discussion concerning whether CLP is entitled to summary judgment on Cooper's back pay claim due to the fact that he would have been terminated shortly after his severance with CLP due to his alleged involvement in the theft of food.  (*See* Def. Br. at 33).